ALBERT H. PETRIE ET AL. v. JAMES M. LANE.

[See 58 Mich. 527.]

*Sawing contract—Damages—Loss of profits.*

Where the *sole* claim for damages made by plaintiffs was for the loss of profits under a sawing contract by reason of the failure of the defendant to deliver the logs, a verdict was properly directed for the defendant.[1]

Error to Muskegon. (Russell, J.) Argued October 26, 1887. Decided November 3, 1887.

Assumpsit. Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*Delano & Bunker,* for appellants.

*Fletcher & Wanty* and *F. W. Cook,* for defendant.

MORSE, J.   In this case the plaintiffs set out in their declaration an agreement with the defendant that the defendant

---
[1] See *Atkinson v Morse,* 63 Mich. 276 (head-note 2).

should deliver to the plaintiffs at their saw-mill, situated in the village of North Muskegon, to be sawed into lumber and piled on the dock of plaintiffs, as the defendant should direct, all the pine saw-logs belonging to defendant at that time in the store booms of the Muskegon Booming Company, at the city of Muskegon as well as all the pine saw-logs which should thereafter, by the defendant, be floated down the Muskegon river, during the sawing season of 1882, in all about 4,000,000 feet; and that the plaintiffs should manufacture the same into lumber, and should receive therefor the sum of $2 per thousand, board measure, for all lumber so manufactured and flat piled on their docks, and $2.25 per thousand for the lumber so manufactured and cross-piled; the same to be sawed and piled during the sawing season of 1882, as the defendant should direct. The contract was oral, and made on the twenty-first of July, 1882.

They also aver that on the same day the defendant notified the booming company, in writing, to deliver his logs to plaintiffs, and that they received from said defendant, under said agreement, in partial fulfillment thereof, 200,000 feet of logs delivered by the booming company to them.

That they prepared and procured, at great expense, everything essential, necessary, or needful to the full and perfect discharge of the agreement upon their part; but that the said defendant caused the logs so delivered to plaintiffs by the booming company, to be surreptitiously removed from the possession of said plaintiffs, and out of their custody and control, and did not, and would not, perform his contract, but wholly neglected and refused so to do, without any reason or excuse whatever; whereby, and by means whereof, the mill of said plaintiffs was, from the time of the default of defendant, to wit, July 24, 1882, to the close of the sawing season of that year, more or less stopped and unable to work, and said plaintiffs put to great expense, and made to suffer great losses.

They further aver that the actual costs and expenses to them of manufacturing said logs into lumber, and flat piling the same on their docks, would not have exceeded the sum of $1.00 per thousand feet, board measure, and would not have exceeded the sum of $1.25 per thousand for sawing and cross piling, and that they could and would have made in the sawing and piling of said lumber, under said contract, a profit of one dollar per thousand feet, board measure, on each and every thousand feet thereof; whereby they have suffered damages in the sum of $10,000, and therefore they bring suit, etc.

Upon demand of defendant, who pleaded the general issue, the plaintiffs filed the following bill of particulars of their claim under said declaration:

"SIR: Take notice that the following is a bill of particulars of the plaintiffs' demand in this cause, and for the recovery of which this action is brought:

| | |
|---|---|
| 1882.   Loss of profits on sawing four million feet of logs to be furnished by defendant as per verbal contract with defendant, as set forth in plaintiffs' declaration, @ $1 per M., - - - - - - - | $4,000 |
| 1882.   Loss of profits on account of the defendant's failure to perform his verbal contract, as set forth in plaintiffs' declaration, - - - - - - - | $5,000 |

"*Dated Muskegon, Michigan, March 10, 1883.*

"Yours, etc.,

"McLAUGHLIN, DELANO & BUNKER,

"Plaintiffs' Attorneys.

"To R. J. MACDONALD, ESQ.,

"Defendant's Attorney."

Upon the trial of the cause in the circuit court for the county of Muskegon, before a jury, the plaintiffs first called, as a witness, Albert H. Petrie. Upon his being sworn, the counsel for the defendant interposed an objection that the plaintiffs were not entitled to the admission of any proof under their declaration, and the bill of particulars furnished in the cause.

Upon inquiry by the court, Mr. Bunker, one of the counsel for the plaintiffs, stated that the only claim they had was

the one set up in the bill of particulars, and that he knew of no other injury which the plaintiffs had suffered.

The court then said:

"If you desire to amend your bill of particulars, I think I will allow you to do so."

*Mr. Bunker.* "We have no desire to amend the bill of particulars."

The court then ruled that, under the bill of particulars as filed, the plaintiffs could not recover.

The counsel for plaintiffs were then permitted to make offer, as fully as they desired, of the proofs they intended to adduce in support of their case. The offer, as made by them, was to prove the contract as set out in their declaration, and a breach of the same as therein set forth, and that, if they had been allowed to perform the agreement, they could have made in profits the difference between $1.16 per thousand feet, reduced by $320, and the total value of the slabs, and two dollars, the contract price.

*The Court.* "The damage you claim is for loss of profits."
*Mr. Bunker.* "The damage we claim is loss of profits as stated in the bill of particulars."

The court thereupon instructed the jury to find a verdict for the defendant, and upon such verdict judgment passed against the plaintiffs, who bring the case here for review.

It will be noticed that the plaintiffs did not offer to show that they had incurred any damage by reason of expenses necessarily incurred in getting ready to perform this contract, or that the mill had been stopped or laid up for any time for want of work, by reason of the breach of the contract on defendant's part. Nor did they even claim nominal damages. They put themselves deliberately upon the naked proposition that, as a matter of law, they were entitled to the profits upon all the logs mentioned in said contract, independent of any fact or thing showing actual damages. In other words, although they incurred no expense on account of preparing to

perform this contract, and their mill was not closed because of the breach of the same, but was at work all the time manufacturing other lumber to its fullest capacity, they were, nevertheless, entitled to the profits they might have made in the fulfillment of this contract, and also all the profits they might make in the same time in sawing other lumber, thereby in effect doubling the capacity of the mill, and increasing its profits twofold.

The compensation aimed at, and which the law intends to give, in an action for a breach of a contract or agreement of this kind, is the damages actually incurred on account of such breach. The law seeks to make good the party injured by such breach, and to put him, as far as possible, in the same condition that he would have been in had the contract been performed. It is not intended that he shall profit by the breach, and receive compensation for injuries that he has not suffered.

Here actual damages were in effect disclaimed, and the circuit judge was right in his ruling.

The damages sought to be recovered must be considered as quite uncertain and speculative. But I do not consider it necessary, as the case stands, to discuss the question whether under any circumstances such profits might or might not be recovered.

The cases bearing upon this question, in this State, do not seem favorably inclined towards allowing the recovery of mere prospective profits in the running of a saw-mill. They are said to be "proverbially uncertain, indefinite, and contingent." *Allis v. McLean,* 48 M ch. 433; *Talcott v. Crippen,* 52 Id. 633; *Petrie v. Lane,* 58 Id. 527.

The judgment is affirmed, with costs.

SHERWOOD and CHAMPLIN, JJ., concurred.

CAMPBELL, C. J., did not sit.